

In the Supreme Court of Virginia

_____

Linwood Gequan Walden, Jr.
(*also known as Linwood Gequan Walden*)

v.

Commonwealth of Virginia

_____

Supreme Court of Virginia Record Number _____

Court of Appeals Record No. 1376-20-2

_____

**PETITION FOR APPEAL**

_____

Meghan Shapiro
Va. Bar No. 79046
Senior Assistant Public Defender
Virginia Indigent Defense Commission
1604 Santa Rosa Rd., Suite 200
Richmond, VA 23229
Tel: 804.662.7249
Fax: 804.662.7359
Email: mshapiro@vadefenders.org

*Counsel for Mr. Linwood Walden*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES       iv

NATURE OF THE CASE       1

ASSIGNMENTS OF ERROR       3

STATEMENT OF FACTS       4

ARGUMENT       10

  I.  Summary of Argument       10

  II.  Standard of Review       12

    A.  The Due Process Right under *Ake v. Oklahoma*       12

    B.  Virginia's Implementation of *Ake*       13

    C.  *De Novo* Review of Constitutional Errors       14

    D.  *De Novo* Review of Mixed Questions of Law and Fact       14

  III.  The defense met its threshold burden: "articulation" that the expert assistance would "likely be a significant factor in the defense," and that Mr. Walden would be prejudiced without it. *AOE 1&2*.       15

    A.  *Ake* requires only a threshold articulation beyond mere hope or suspicion.       15

    B.  The defense met the *Ake* threshold test. *AOE 1*.       19

      a.  The defense proffer met the legal test that the expert would "likely be a significant factor" in Mr. Walden's sentencing defense. 19

      b.  Mr. Walden's counsel also established that he would be prejudiced by the denial of his psychologist.       22

    C.  If the courts below correctly applied *Husske*, then *Husske* is inconsistent with *Ake* and the Due Process Clause. *AOE 2*.       27

  IV.  The Court of Appeals applied incorrect standards of review.       27

A.  The Court of Appeals reviewed Mr. Walden's due process claim for "abuse of discretion," when it should have reviewed it *de novo*. *AOE 3A*.                                                28

B.  The Court of Appeals reviewed the trial court's ruling for plain error as if it was a finding of fact, when it should have reviewed it *de novo* as a mixed question of law and fact. *AOE 3B*.        29

C.   The Court of Appeals misapplied Virginia Code Section 8.01-680, which has no relevance to this case. *AOE* 3C.                     32

CONCLUSION                                                        35

CERTIFICATE                                                       36

# TABLE OF AUTHORITIES

## Cases

*Ake v. Oklahoma*, 470 U.S. 68 (1985) .............................................. passim

*Batson v. Kentucky*, 476 U.S. 79 (1986) ............................................ 15, 34

*Bethea v. Commonwealth*, 297 Va. 730 (2019)............................ 15, 16, 34

*Commonwealth v. Sanchez*, 268 Va. 161 (2004) ............................. passim

*Dennis v. Commonwealth*, 297 Va. 104 (2019) .......................................33

*Dowdy v. Commonwealth*, 278 Va. 577 (2009) ............................... passim

*Dudleys v. Dudleys*, 30 Va. (3 Leigh) 436 (1832) ....................................34

*Henderson v. Commonwealth*, 285 Va. 318 (2013) ........................... 14, 29

*Husske v. Commonwealth*, 252 Va. 203 (1996)............................... passim

*Johnson v. California*, 545 U.S. 162 (2005) ...........................................16

*Johnson v. Commonwealth*, 292 Va. 772 (2016)......................... 14, 18, 19

*Kimmelman v. Morrison*, 477 U.S. 365 (1986) .......................................31

*Love v. Freeman*, 1999 U.S. App. LEXIS 20783 (4th Cir. Aug. 30, 1999) (unpub.)....................................................................................................32

*McWilliams v. Dunn*, 137 S.Ct. 1790 (2017)...........................................12

*Pullman-Standard, Div. of Pullman v. Swint*, 456 U.S. 273 (1982)......30

*Ross v. Moffitt*, 417 U.S. 600 (1974) ................................................ 17, 21

*Sandberg v. Va. Bankshares*, 979 F.2d 332 (4th Cir. 1992) ..................30

*Savino v. Murray* , 82 F.3d 593 (4th Cir. 1996)....................................31

*Taylor v. Northam*, 300 Va. 230 (2021)............................................ 14, 29

*Tsc Indus. v. Northway*, 426 U.S. 438 (1976) ........................................31

*United States v. Awadallah*, 349 F.3d 42 (2d Cir. 2003).......................31

*United States v. Ippolito*, 774 F.2d 1482 (9th Cir. 1985)......................31

*United States v. Wiedyk*, 71 F.3d 602 (6th Cir. 1995) ...........................31

*Walden v. Commonwealth*, No. 1376-20-2 (Va. App. Feb. 22, 2022) (unpub.)................................................................................................ passim

*Williams v. Taylor*, 529 U.S. 362 (2000) ...............................................31

*Williams v. Warden*, 254 Va. 16 (1997)..................................................31

*Yarbrough v. Warden*, 269 Va. 184 (2005).............................................31

**Statutes**

Va. Code sec. 8.01-680 ................................................................. 32, 33, 35

**Constitutional Provisions**

U.S. Const. Amend. XIV, Due Process Clause .......................................... 1

## NATURE OF THE CASE

Linwood Walden needed an expert psychologist to assist his defense at sentencing after he was convicted of abduction and robbery. His counsel made a timely motion pursuant to the due process right established in *Ake v. Oklahoma*, 470 U.S. 68 (1985), and following the procedure established by this Court in *Husske v. Commonwealth*, 252 Va. 203 (1996): she proffered a threshold articulation of the numerous reasons the expert was likely to be a significant factor in Mr. Walden's defense; and argued he would be prejudiced without it.

Yet, the trial court denied the motion, rejecting counsel's proffer as a matter of fact even though it was properly made (and unobjected-to). A panel of the Court of Appeals then affirmed, reviewing the trial court's ruling as if it was a factual inquiry only.

But the question of whether an accused meets the requisite preliminary showing of need under *Ake* and *Husske* is not a purely factual issue; it is a mixed question of law and fact. By reviewing it as a question of fact, the panel gave inappropriate deference to the trial court's ruling, and as a result sanctioned a legal threshold higher than *Ake* and the Due Process Clause permit.

# MATERIAL PROCEEDINGS BELOW

Mr. Walden was convicted of two counts each of abduction and robbery in a bench trial on January 21, 2020, in the Circuit Court for the City of Richmond. J.A.[1]33 *et seq.* Before his sentencing hearing, Mr. Walden, who is indigent, filed a Motion for Release of Court Funds for Expert Assistance, requesting appointment of a psychologist to assist his defense at sentencing. J.A.232 *et seq.* (written motion); J.A.262 *et seq.* (argument). In support, counsel made detailed factual proffers of his particularized need, including that the expert would diagnose and evaluate Mr. Walden's mental illnesses, review his history of highly sympathetic traumatic experiences both during childhood and recent adulthood, and craft a mental health treatment plan that would greatly reduce his likelihood of recidivism.

He unsuccessfully renewed that motion at the beginning of his sentencing hearing, on November 20, 2020. J.A.287 *et seq.* The final order issued on December 8, 2020, J.A.281, sentencing Mr. Walden to 22 years active incarceration plus 58 additional years suspended.

---

[1] All record citations are to the Court of Appeals Joint Appendix.

The Court of Appeals granted Mr. Walden an appeal of his *Ake* claim, but upheld the trial court's actions. *Walden v. Commonwealth*, No. 1376-20-2 (Va. App. Feb. 22, 2022) (unpub.).

## ASSIGNMENTS OF ERROR

1. The Court of Appeals erred in finding the trial court did not err in denying Mr. Walden's motion for expert assistance, where the Court of Appeals violated *Husske v. Commonwealth*, 252 Va. 203 (1996), and *Ake v. Oklahoma*, 470 U.S. 68 (1985).

*Walden v. Commonwealth*, No. 1376-20-2, at 6-7 (Va. App. Feb. 22, 2022) (unpub.); J.A.232-37 (motion); J.A.266-80 (argument); J.A.280-81 (denial); J.A.286 (order); J.A.295-96 (motion); J.A.296-97 (denial).

2. To the extent the Court of Appeals ruled consistently with *Husske v. Commonwealth*, 252 Va. 203 (1996), *Husske* violates *Ake v. Oklahoma*, 470 U.S. 68 (1985), and should be overturned, extended, modified, or vacated.

3. The Court of Appeals erred by applying three incorrect standards of review:

   a. an abuse-of-discretion standard to a constitutional due process claim;

   b. a factual standard of review to a legal ruling;

   c. and Virginia Code Section 8.01-680 to a non-sufficiency claim on appeal.

*Walden*, No. 1376-20-2, at 1, 3 & 7.

3

## STATEMENT OF FACTS

When Mr. Walden was six years old, a beating and rape by a stranger left his mother mentally unstable and drug-dependent, transforming what could have been a supportive home environment into a dangerous and upsetting one. J.A.275-76. Under various caregivers, young Mr. Walden was exposed to drug abuse, neglect, and physical abuse. J.A.275-76; 266. As a teen, he developed bipolar disorder (which ran in his family). J.A.266, 278. He received no mental health treatment or other interventions at any point, and was left to suffer on his own without any of the coping mechanisms that nurtured children develop.

As a young adult, he became a father; but his beloved three-year-old daughter was murdered by another caregiver in a highly-publicized incident. J.A.276. Another child of his, an infant, died from SIDS. J.A.277. Within a year, he became addicted to drugs, attempted suicide, and committed the present felonies.

All of this was proffered[2] by Mr. Walden's public defender in support of her motion for an expert psychologist to assist with sentencing.

---

[2] Mr. Walden's suicide attempt was not part of counsel's proffer, but is included above because it was ultimately introduced as uncontroverted evidence at sentencing. *Infra.*

Trial counsel also proffered that the expert would offer opinions on two significant issues: she would explain the connection between Mr. Walden's mental health and trauma history, and his behavior; and she would rebut concerns over whether Mr. Walden would recidivate. Recidivism would clearly be a significant issue in Mr. Walden's sentencing proceeding, given a prior robbery, his relative youth, and his untreated mental illness. The expert would have addressed that, however, by explaining that Mr. Walden's mental health would improve with treatment; and that his past criminal behavior was attributable to symptoms of his untreated mental illnesses:

- "I think that's the most important part is that she can help this Court crack [*sic*.] the plan. We have to understand how we got to where we are and understand where we are so we know how to move forward in a way that protects, not just Mr. Walden and not just for mitigation at sentencing, but protects the community when he is eventually released from incarceration . . . .what she can go into is his experiences of trauma, the long-term affect that results from that trauma, and that it impacts actions and ability to understand actions . . . to inhibit impulses and control your own behavior and that destructive behavior often is a result of an attempt to mitigate emotional trauma." J.A. 266-67.

- "[S]he can help evaluate what tools [traumatized people] have available and expand that tool box . . . so that they can more appropriately [behave.]" J.A.267.

- "He would be significantly harmed by an inability to explore that and present mitigation to the Court explaining how this happened,

how he came to be here, and, most importantly, how we can fix it moving forward." J.A.269. "[It] helps his case and helps for when he is released to reduce the risk of recidivism and to make the community safer." *Id.*

- "He's previously been incarcerated on a robbery charge. I'm sure the Commonwealth will bring that up. In speaking with Dr. Boyd about that prior history . . . you re-evaluate, you check the diagnosis, and, then, you try something else. . . . The answer isn't to increase . . . the amount of time. It's to re-evaluate the premise . . . so that we can actually get at the root issue. . . . to make him better, more able to function in society and to protect society when he is eventually released, I think, it's absolutely imperative that the Court allow us to do that." J.A.270.

- ". . . to evaluate Mr. Walden and to dig into mental health issues, and, particularly, his history of trauma and mental health while occurring and how that can impact decision-making behavior and what measures can be put in place in the future to address those issues." J.A.296.

The proffers spanned fifteen pages of transcript, J.A.232-37 & 266-280, and were unobjected-to. Yet the trial court rejected the proffered facts, believing they conflicted with a summary recitation of Mr. Walden's psychosocial history found in the presentence report. J.A. 280-281.

The presentence report, for purposes of Mr. Walden's motion for expert assistance, the court viewed cold and without testimony. It stated that Mr. Walden's childhood was fine and that he had no history of mental health treatment or childhood abuse. J.A.392 ("He was provided adequate food, clothes, and shelter."); *id.* ("No type of abuse reported.");

6

*id.* ("He reports no alcohol or drug use in his family life."); J.A.396 ("Walden reports no history of mental health treatment."); *id.* ("He does not feel that he has a drug problem and does not feel that he needs treatment."). It contained this vastly incomplete information because it was based on a probation officer's single, remote, brief, non-private interview of the incarcerated Mr. Walden, during which he declined to offer up his family's complex dysfunction and his darkly traumatic childhood. J.A.275-76. *See also* J.A.318-19 (officer later testifying that she completed the interview during one 30-60 minute remote visit).

Defense counsel argued the PSR's shortcomings to the court[3] (along with her far-more-detailed proffers, *supra*). Mr. Walden even personally tried, on the record, to correct the error, explaining how hard it was to speak about his past. J.A.282 ("I just wanted to say, man, it's not easy

---

[3] J.A.275-76 (officer talked to him one time, remotely, and "[o]f course he doesn't tell them every single story or mention every single trauma especially in regards to his parents. He loves his parents. They remain close to this day. They are deeply important to him. [But] I will tell the Court that Mr. Walden has had a particularized history of trauma. . . ."); *id.* at 277 ("This is a great example of why you can't rely on the presentence report to get to the heart of the issues especially when it comes to trauma and mental health issues."); *id.* at 280 (PSR interview is "not an in-depth length heart-to-heart"); *id.* at 291 (he didn't share his family history with the officer).

getting on this (indecipherable.) It's not easy to tell your like trauma about your family. It's . . . that's something you don't understand.").

As the trial court would later agree, Mr. Walden held his personal history close for understandable, "obvious" reasons. J.A.358 ("After hearing from your mother, I can clearly understand why you might not want to disclose something like that, obviously.").[4] When denying the motion, however, the trial court relied solely on the PSR's summary assertions over counsel's proffer, finding no "particularized need" demonstrated in the PSR. J.A.280-81, 296-97.

At the sentencing hearing, the defense presented live witness testimony confirming everything counsel had earlier proffered (and more). Testimony was taken from Mr. Walden's mother about his childhood and adult traumas, J.A.298-317; and from the mother of his deceased daughter about their loss. J.A.321-328.

The defense also presented testimony from a mitigation specialist who assembled Mr. Walden's social history records. The mitigation

---

[4] *See also* J.A.364 (Appellant's allocution: "I didn't want to get up here and degrade myself as well as my family. So, I was going to wait for today to do it, you know what I mean, but I didn't want to tell her or anybody else about me. It's not nobody else's job to tell you about my life. Who better to tell you about me than me.").

specialist testified to the existence of his teenage bipolar diagnosis, lack of treatment, childhood abuse and instability, uncounseled grief, substance addiction, and suicide attempt. J.A.328-344. Summaries of his medical records were admitted, J.A.333, including his bipolar diagnosis at age 19, along with alcohol dependency, auditory hallucinations, suicidal ideations, and a suicide attempt. J.A.334, 338, 341.

The mitigation specialist could not testify about the features or treatment potential of Mr. Walden's bipolar disorder, about his potential to recidivate, nor how treatment might reduce that risk. She did not identify specific therapeutic techniques or medications appropriate for his disorders, or could reduce his risk of criminal behavior; nor was she (as a non-expert, non-psychologist) qualified to do so.

The defense argued for a mitigated sentence based on Mr. Walden's compelling childhood, and the heartbreaking loss of his daughter, which exacerbated his mental instability and substance dependency, and led to his crimes. J.A.346-49. Counsel could not explain why or how Mr. Walden's future behavior would be better, because the record was bereft of that evidence. J.A.350 (summarily stating that there is "treatment" for Mr. Walden's problems, with no basis in the record).

The Commonwealth's argument focused on Mr. Walden's criminal history, J.A.351-52, and its position that "he is unwilling to stop committing violent crimes against strangers." J.A.356. They closed by stating "he's not going to stop when he's released." J.A.357.

The trial court found the defense testimony compelling, and concluded Mr. Walden deserved "credit" and "consideration" for his sympathetic social and psychological mitigation. J.A.367, 369. (As noted *supra*, the court even expressed its understanding as to why Mr. Walden did not share his full history with the PSR officer. J.A.282.)

But the court agreed with the guidelines' incorporation of Mr. Walden's criminal history, and saw no reason to depart from that. J.A.368. Therefore, despite compelling mitigation, the court sentenced Mr. Walden to 22 years of incarceration (plus 58 years suspended).

## ARGUMENT

## I. Summary of Argument

The trial court erred in denying Mr. Walden's motion for expert assistance. The defense satisfied *Ake* with a preliminary articulation that the expert would likely be a significant factor in Mr. Walden's defense, and that he would be prejudiced without it. *Assignment of Error 1.* That

due process threshold was met with a detailed proffer. Yet, instead of accepting the proffer for purposes of applying *Ake* and *Husske*, the court engaged in premature factfinding and credibility assessments, ultimately refusing the requested expert on that improper basis.

An *Ake* determination entails applying a threshold legal standard to defense counsel's preliminary articulation of need. It does not involve credibility assessments or factfinding. Yet, Mr. Walden's trial court denied him an expert on just that basis.

The Court of Appeals then made precisely the same mistake, reviewing the trial court's ruling as if it were a purely factual question. Its unpublished panel opinion applied several incorrect standards of review, all of which gave improper deference to the trial court's (premature factual) finding. *AOE 3*. The panel's errors were rooted in the same mistake as the trial court's: incorrectly viewing this as a factual question, rather than a legal (and constitutional) one.

These errors by the Court of Appeals (*AOE* 3) led directly to its denial of Mr. Walden's due process right to expert assistance under

*Husske* and *Ake* (*AOE* 1).[5] Instead, the panel should have recognized the ruling below as a question of law, and reviewed it *de novo*. Under the correct standard, Mr. Walden's sentence should have been vacated.

## II.  Standard of Review

### A. The Due Process Right under *Ake v. Oklahoma*

The state must provide necessary expert assistance to indigent persons facing criminal charges. *Ake*, 470 U.S. 68. This Court has interpreted *Ake* to implicate both the Due Process and Equal Protection Clauses. *Husske*, 252 Va. at 205, 213 & 220.

A defense expert must be appointed if necessary to "an adequate opportunity to present [defense] claims fairly within the adversary system," as part of the "basic tools of an adequate defense." *Ake*, 470 U.S. at 77. This rule applies with full force to sentencing proceedings. *Id*. at 84; *McWilliams v. Dunn*, 137 S.Ct. 1790, 1798 (2017). Under *Ake*, an expert must be provided if the defense makes a threshold showing that it is "likely to be a significant factor in [the] defense[.]" 470 U.S. at 82.

---

[5] Alternatively, if the Court of Appeals is correct that the trial court complied with *Husske*, despite defense counsel satisfying the requirements of *Ake*, then *Husske* should be modified, extended, overturned or vacated to comply with *Ake*. *AOE 2*.

*Ake*'s is a threshold, "preliminary showing" requirement of "likel[ihood]." 470 U.S. at 74. Nothing need be proven (there is no standard of proof), and no evidence presented; the defense must only "articulate" its need. *Commonwealth v. Sanchez*, 268 Va. 161, 167 (2004).

## B. Virginia's Implementation of *Ake*

Virginia implements *Ake* using this test: an expert must be provided if the subject matter is "likely to be a significant factor in his defense" (or "materially assist him in the preparation of his defense,"); and the accused will be "prejudiced by the lack of expert assistance" (or "result in a fundamentally unfair trial"). *Husske*, 252 Va. at 212-12; *Dowdy v. Commonwealth*, 278 Va. 577, 594 (2009) ("*Husske's* requirement of prejudice is faithful to *Ake* and is nothing more than another way of asking whether the denial of expert assistance would result in a fundamentally unfair trial[.]").

But Virginia has added one additional requirement: "The indigent defendant who seeks the appointment of an expert must show a particularized need." *Husske*, 252 Va. at 212. Findings against "particularized need" have been reviewed for abuse of discretion, and upheld where the defense presented "mere hope or suspicion that

13

favorable evidence is available[.]" *Sanchez*, 268 Va. at 165 (quoting *Husske*, 252 Va. at 212-13). *See also Johnson v. Commonwealth*, 292 Va. 772, 778 (2016) (same); *Dowdy*, 278 Va. at 595 (same).

### C. *De Novo* **Review of Constitutional Errors**

Mr. Walden brings his claim not only pursuant to *Husske*, but also the Due Process Clause directly. The "abuse of discretion" standard is inadequate to review constitutional error; *de novo* review is necessary. *Henderson v. Commonwealth*, 285 Va. 318, 329 (2013) ("[W]hether a defendant's due process rights are violated . . . is a question of law, to which we apply a de novo standard of review.") (citing federal cases).

### D. *De Novo* **Review of Mixed Questions of Law and Fact**

In considering an *Ake/Husske* claim, the defense's preliminary showing of need is not a purely factual question; it involves a legal conclusion about the theory of defense and the need for rebuttal ("likely to be a significant factor in his defense," "materially assist him in the preparation of his defense," and whether the resulting trial would be "fundamentally unfair"). Legal conclusions, even if mixed questions of law and fact, are not subject to the "plainly wrong" standard. *Taylor v. Northam*, 300 Va. 230, 250-51 (2021) ("It is well-settled that [this Court]

reviews questions of law *de novo*, including those situations where there is a mixed question of law and fact.") (internal quotations omitted).

III. **The defense met its threshold burden: "articulation" that the expert assistance would "likely be a significant factor in the defense," and that Mr. Walden would be prejudiced without it. *AOE 1&2*.**

   A. ***Ake* requires only a threshold articulation beyond mere hope or suspicion.**

All that is necessary under *Ake* is that the defense make a "threshold showing," *Ake*, 470 U.S. at 82, that an expert is "**likely** to be a significant factor in his defense[.]" *Husske*, 252 Va. at 211 (quoting *Ake*, 470 U.S. at 82-83) (emphasis added).

This is akin to a *prima facie* showing, which can be met by way of proffer, just like the "step one" stage of a *Batson*[6] objection. *See Bethea v. Commonwealth*, 297 Va. 730, 756 (2019) (at the *prima facie* step-one phase of a *Batson* objection, the trial court must only have "found that the hearsay proffer, if true, could demonstrate purposeful discrimination"). A proper proffer may be a "unilateral avowal of counsel

---

[6] *Batson v. Kentucky*, 476 U.S. 79 (1986) (establishing a three-step process for raising a claim of racially-motivated peremptory strikes; the first step is a *prima facie* showing of discrimination with no burden of persuasion).

of testimony that could be presented." *Id.* at n.13 (quoting *Bloom v. Commonwealth*, 262 Va. 814, 821 (2001)).

As with a step-one *Batson* objection, the preliminary *Ake* showing carries no burden of persuasion, so the trial court should not be making credibility or weight-of-evidence determinations. In the *Batson* context, such determinations are not made until step three; in the *Ake* context, unless defense counsel's proffer is objected-to, they should wait until the adversarial trial. *Bethea*, 297 Va. at 749 (the step-one "*prima facie* case need not 'show that it is more likely than not' that the basis of the strike was purposeful racial discrimination. [] This is a 'narrow but important' point. []. The "more likely than not' standard is an inappropriate yardstick' for a *prima facie* case under step one of a *Batson* challenge.") (internal citations omitted) (quoting *Johnson v. California*, 545 U.S. 162, 168 (2005)); *id.* ("It is not until the *third* step that the persuasiveness of the justification becomes relevant — the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination.") (emphasis in original); *cf. id.* at 749-50 (observing that the Title VII framework similarly "can involve no credibility assessment" at step one).

These principles come straight from the language of *Ake* and *Husske*. To obtain expert assistance, the accused must "demonstrate" (rather than prove) that the expert "will contribute to the formulation and perfection of a viable defense" (rather than prove the defense itself). *Husske*, 252 Va. at 218. This threshold demonstration by counsel has also been discussed in terms of "articulat[ion]" -- again, rather than proof. *Sanchez*, 268 Va. at 167. Any steeper requirement risks denying the accused the ability to "evaluat[e,] prepar[e,] and present[] the defense." *Id*. (quoting *Ake*, 470 U.S. at 83. (In other words, denying the "**opportunity** to present [his] claims fairly within the adversary system." *Husske*, 252 Va. at 211 (quoting *Ross v. Moffitt*, 417 U.S. 600, 612 (1974)) (emphasis added).)

In short, *Ake*'s is a burden to show likelihood, need-for-evaluation, and need-for-preparation, rather than proof of the ultimate issue. It would be a Catch-22 to require more of the indigent accused, before "making certain that he has access to the [very] raw materials integral to the building of [his] effective defense." *Ake*, 470 U.S. at 77.

An *Ake* determination does not require credibility assessments or factfinding. It evaluates, based on a threshold articulation by counsel, the

need for assistance in preparing for an adversarial trial.[7] *Ake* hearings in other jurisdictions are often not even held *inter partes*.[8] For purposes of satisfying *Ake*, it simply does not matter whether the expert's ultimate opinions, and the factual foundation underlying them, will be disputed at trial – in fact, it should be assumed they will be.

In other words, an *Ake* hearing is not the proper forum for the court to resolve factual disputes. Instead, it should take at face value counsel's articulation of need, and apply *Ake* and *Husske*'s legal standards thereto.

Virginia cases have consistently recognized these parameters of the threshold *Ake* showing, rejecting claims for expert appointment only when the defense presented just a "mere hope or suspicion that favorable evidence is available," beginning with *Husske* itself. *See Sanchez*, 268 Va. at 165 (quoting *Husske*, 252 Va. at 212-13). *See also Johnson*, 292 Va. at 778 (same); *Dowdy*, 278 Va. at 595 (same). In all of these cases, the

---

[7] *See Ake*, 470 U.S. at 77 (defense experts are necessary to a fundamentally fair adversarial system).

[8] In *Ake*, the Supreme Court spoke of such motions being filed *ex parte*. *Ake*, 470 U.S. at 82-83 ("When the defendant is able to make an *ex parte* threshold showing to the trial court that his sanity is likely to be a significant factor in his defense, the need for the assistance of a psychiatrist is readily apparent.").

defense made conclusory assertions that the sought-after expert or investigator would yield information favorable to the defense; or merely generalized statements that an expert would assist them.[9]

In contrast with those cases, a proper preliminary articulation under *Husske* and *Ake* proffers something more than "mere hope or suspicion," though is not required to *prove* it at this threshold stage.

### B. The defense met the *Ake* threshold test. *AOE 1.*

#### a. The defense proffer met the legal test that the expert would "likely be a significant factor" in Mr. Walden's sentencing defense.

Defense counsel made a rich, detailed proffer of Mr. Walden's mental health history, from age five through adulthood. The argument, in support of a six-page written motion, spans 15 pages of transcript. J.A.232-37; J.A.266-280. As detailed in the Statement of Facts above, Mr.

---

[9] In *Husske*, the defense asserted, "[a]t best," that it needed a DNA expert because "DNA evidence is 'of a highly technical nature'" and "it was difficult for a lawyer to challenge DNA evidence without expert assistance[.]" 252 Va. at 213. These were "generalized statements [that] simply fail[ed] to show a particularized need." *Id.* In *Sanchez*, defense counsel's proffer "rest[ed] only on conclusory assertions[.]" 268 Va. at 166. The "trial court was left only to guess whether the unknown, unexplained potential testimony of Sanchez' expert would be a significant or material factor in his defense[.]" *Id.* And in *Johnson*, counsel sought an expert "with no idea what evidence might be developed or whether it would assist him in any way." 292 Va. at 778-79.

Walden's stability was obliterated at a tender age, victimizing him and leaving him exceedingly vulnerable to being derailed by bipolar disorder in his teens, the unbearable grief of losing his young children as a young adult, and substance dependencies. *Supra*. Without treatment for any of these burdens, his mental health plummeted. There was no question that this background was material and significant to his sentencing hearing.

Defense counsel further made specific proffers about the substantial, relevant contribution the expert psychologist would make at the sentencing hearing, as detailed in the Statement of Facts, *supra*. Of particular significance, the expert would opine as to Mr. Walden's mental health diagnoses, their symptoms, their effect on his behavior, and his future prognosis; and she would craft an effective treatment plan that would reduce Mr. Walden's likelihood of recidivism. *Supra*.

All of this information was before the court in support of Mr. Walden's motion for expert assistance. It demonstrated a "particularized need," and that the assistance was likely to be a significant factor for the defense. *Husske*. It also demonstrated the need for an expert psychologist "to present [defense] claims fairly within the adversary system," as part

of the "basic tools of an adequate defense." *Ake*, 470 U.S. at 77. It was error for the trial court to deny the expert assistance on this record.

Yet, the trial court rejected the defense proffer, due to language contained in the PSR. The conclusory, written, hearsay, non-contextualized statements of the PSR should not have canceled out counsel's detailed proffers, particularly in light of attempts by counsel and Mr. Walden to explain the PSR's inaccuracy. For purposes of a motion for expert assistance, under *Husske* and *Ake*, counsel's proffers should be evaluated for particularity on their own two feet, precisely because their very purpose is demonstrating **need for assistance in an upcoming adversarial proceeding**. It can therefore be expected that the expert's opinions, as well as the factual foundation underlying them, will be disputed. It is illogical to deny the defense their expert due to the very reason they need that expert; that violates the holding of *Ake* that defense experts are necessary to a fundamentally fair adversarial system. 470 U.S. at 77 (citing *Ross*, 417 U.S. at 612).

The trial court acted contrary to *Ake* by instead placing a higher burden on the defense to overcome the lack of information in the PSR. The trial court later commented that, "in order for the Court to consider

something like" Mr. Walden's true mental health and trauma history, given its absence from the PSR, "I would almost need an evidentiary hearing with witnesses to explain why someone could be -- could give information so completely opposite of what was happening." J.A.358.

This statement reveals that the trial court applied something higher than the "mere hope or suspicion" threshold of *Ake* and *Husske*; it required the defense to evidentiarily *prove* its factual representations, and denied the motion on the basis of its factfinding and credibility determinations. The Court of Appeals then made precisely the same error, finding nothing wrong with requiring the defense to prove the factual foundation of its request (and reviewing the trial court's ruling as a purely factual finding). *Walden*, at 6-7. *AOE 1.*

> **b. Mr. Walden's counsel also established that he would be prejudiced by the denial of his psychologist.**

Neither of the courts below reached the prejudice prong of Mr. Walden's claim. This prong of *Husske* "directs a trial court to determine, based on the facts of the particular case, the probable value of providing the requested assistance and the risk of error in the criminal proceeding if such is not provided." *Dowdy*, 278 Va. at 593. The *Ake* Court spoke of

defenses being "devastated by the absence of" the expert assistance, 470 U.S. at 83; this will occur when the probable value of the defense evidence and the risk of error without it combine to outweigh the state's "interest in economy," *i.e.* the state's desire not to pay. *Dowdy*, 278 Va. at 593.

The prejudice prong is met here. Under the particular facts of this case, a young, poor man was unable to defend himself against strong arguments that he would re-offend. As a result, he was sentenced to an elevated sentence despite his positive prognosis for treatment, and a digestible explanation for his past conduct.

Mr. Walden's counsel proffered two main reasons why Mr. Walden would be prejudiced by the denial of his requested expert. First, the expert would have rendered her own diagnoses and explained their relevance to Mr. Walden's past behavior. Second, the expert would have designed a treatment plan to reduce Mr. Walden's risk of recidivism, "get at the root issue," and rehabilitate this still-young man, whose thus-far-untreated mental illnesses had led him to commit crimes. *Supra.*

Without a defense expert, none of this evidence could be presented. At the sentencing hearing, the trial court spoke of the actions Mr. Walden took on the day of his crime, seemingly drawing no connection between

his mental health and his behavior. J.A.367-68. The court had expressed skepticism of the legitimacy of bipolar disorder, J.A.279 ("these words are thrown out very loosely now and people – everybody who comes before the Court all of a sudden is bipolar and it used to be ADHD . . . So, without there being some, you know, some physician indicating that that was a diagnosis . . . I don't think that's sufficient."), something the expert unquestionably would have addressed. Mr. Walden was therefore prejudiced by the lack of expert testimony confirming his diagnoses, and linking his mental illness and trauma history to his behavior.

But Mr. Walden was particularly prejudiced by his inability to address recidivism. From the start, that promised to be a significant pitfall for the defense, given a prior robbery, Mr. Walden's relative youth, and his untreated mental illness. This was one of defense counsel's main bases for requesting expert assistance.[10]

---

[10] J.A.270 ("He's previously been incarcerated on a robbery charge. I'm sure the Commonwealth will bring that up. In speaking with Dr. Boyd about that prior history . . . you re-evaluate, you check the diagnosis, and, then, you try something else. . . . The answer isn't to increase . . . the amount of time. It's to re-evaluate the premise . . . so that we can actually get at the root issue. . . . to make him better, more able to function in society and to protect society when he is eventually released, I think, it's absolutely imperative that the Court allow us to do that."). During the sentencing proceeding, the Commonwealth heavily argued this point,

The missing defense expert would have rebutted these arguments directly, explaining that treatment would improve Mr. Walden's mental health; and that his past behavior was attributable to symptoms of his untreated illnesses. *Supra*. Without those opinions, there was simply no evidence before the trial court to mitigate the fear of recidivism.

The defense witnesses included Mr. Walden's mother, who spoke about her and her son's traumatic experiences and mental struggles, J.A.298 *et seq.*; and the mother of Mr. Walden's murdered three-year-old daughter, who spoke of his love for the girl and the depth of his grief. J.A. 321 *et seq.* Offering only lay testimony about Mr. Walden's past experiences, neither could allay any worries about recidivism.

Mitigation specialist Molly O'Rourke testified as a fact witness (she was not offered as an expert witness) to introduce some of Mr. Walden's medical records and a timeline of his traumatic experiences. J.A.330, 333. The records reflected Mr. Walden was diagnosed with bipolar disorder and substance dependency, J.A.334-35, and experienced suicidal

---

J.A.351-52 (discussing Mr. Walden's criminal history); J.A.356 ("he is unwilling to stop committing violent crimes against strangers"); J.A.357 ("he's not going to stop when he's released").

ideations, a suicide attempt, and auditory hallucinations. *Id;* J.A.338.

Ms. O'Rourke then offered this limited testimony:

- Parental drug use can influence a child to also use drugs. J.A.336.

- Parental absence can lead to risky behaviors. *Id.*

- Child abuse can lead to criminal behaviors. J.A.337.

- Mr. Walden turned to substance use to cope with his complex traumatic experiences. J.A.339.

- Finally, she identified a wrap-around treatment facility that Mr. Walden could attend upon his release. J.A.340.30, 333.

Ms. O'Rourke could not, and did not, offer any expert opinions about the features or treatment potential of Mr. Walden's illnesses, concerning his potential to recidivate, nor how treatment might reduce that risk. If anything, her limited testimony invited the conclusion that Mr. Walden's childhood experiences and substance dependency left him an ongoing risk to others. Her identification of a general treatment facility was nonspecific to Mr. Walden's actual prognosis; she did not (nor was she qualified to) identify any therapies or medications appropriate for his disorders, nor that could reduce his risk of criminal behavior.

Thus, even though the trial court found the defense mitigation witnesses compelling, J.A.367&369 (noting that Mr. Walden deserved

"credit" and "consideration" for his sympathetic history), it saw no reason to depart from the guidelines' incorporation of his criminal history. J.A.368. Therefore, despite his compelling mitigation, the court sentenced Mr. Walden to 22 years of active incarceration.

This resulting prejudice was foreseeable at the time of the defense's *Ake* motion. The value of the needed assistance was high, and the risk of its absence – an utter inability to mitigate the spectre of recidivism – significant. *See Dowdy*, 278 Va. at 593. Because Mr. Walden's defense was "devastated by the absence" of the assistance, *Ake*, 470 U.S. at 83, and his need outweighed the state's "interest in economy," *Dowdy*, 278 Va. at 593, his due process rights under *Ake* and *Husske* were violated.

### C. If the courts below correctly applied *Husske*, then *Husske* is inconsistent with *Ake* and the Due Process Clause. *AOE 2.*

Even if the rulings below were consonant with *Husske*, the expert should have been granted under *Ake*. In that instance, *Husske* should be modified, extended, overruled or vacated because it does not provide indigent defendants full due process protection. *AOE 2.*

## IV. The Court of Appeals applied incorrect standards of review.

An *Ake* determination entails applying a threshold legal standard to defense counsel's preliminary articulation of need. It does not require credibility assessments or factfinding. *Supra.* Yet, Mr. Walden's trial judge engaged in precisely that, denying him a necessary expert on the basis of premature credibility determinations. The Court of Appeals then made the same mistake, reviewing the trial court's ruling as if it were a purely factual question. These errors (*AOE 3*), detailed below, led directly to the panel's denial of Mr. Walden's due process right. *AOEs* 1&2, *supra.*

### A. The Court of Appeals reviewed Mr. Walden's due process claim for "abuse of discretion," when it should have reviewed it *de novo. AOE 3A.*

In upholding the trial court, the Court of Appeals used an "abuse of discretion" standard to evaluate Mr. Walden's *Ake* claim. *Walden*, No. 1376-20-2, at 1 ("The issue on appeal is whether the trial court abused its discretion by denying Walden's request for funds to hire a mitigation expert to testify at his sentencing."); *id.* at 7 ("[T]he trial court did not abuse its discretion by . . . holding that Walden failed to demonstrate a particularized need for expert assistance.").

It should have used a *de novo* standard, because the defense right to expert assistance is a constitutional one (due process and equal

protection). *See Henderson*, 285 Va. at 329 ("[W]hether a defendant's due process rights are violated . . . is a question of law, to which we apply a de novo standard of review.") (citing federal cases).

> **B. The Court of Appeals reviewed the trial court's ruling for plain error as if it was a finding of fact, when it should have reviewed it *de novo* as a mixed question of law and fact. AOE 3B.**

The Court of Appeals applied a factual standard of review (plain error) to the trial court's denial of expert assistance. *Walden*, No. 1376-20-2, at 6 ("In light of the trial court's determination that Walden's proffers were insufficient to satisfy the legally required threshold showing, Walden's motion for expert funds was denied. That determination is neither plainly wrong nor without evidentiary support."); *id.* at 7 ("Because the trial court's decision to deny Walden's request for expert funds was not plainly wrong or without evidentiary support, we affirm.").

It should have used a *de novo* standard, because the trial court's decision was a mixed question of law and fact. *Taylor*, 300 Va. at 250-51 ("It is well-settled that [this Court] reviews questions of law *de novo*, including those situations where there is a mixed question of law and fact.") (internal quotations omitted) (brackets in original).

In considering an *Ake*/*Husske* claim, the defense's preliminary showing of need involves the application of several legal standards to the facts. This is the definition of a "mixed question of law and fact." *Pullman-Standard, Div. of Pullman v. Swint*, 456 U.S. 273, 289 n.19 (1982) (defining mixed questions of law and fact as: "the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated."); *Sandberg v. Va. Bankshares*, 979 F.2d 332, 350 (4th Cir. 1992) ("the determination here primarily involved the application of a legal standard to historical facts . . . and therefore was a mixed question of law and fact that should be reviewed de novo") (citing *Pullman*).

The following legal standards are components of any *Ake*/*Husske* ruling: whether the requested expert will "likely to be a significant factor in his defense"/"materially assist him in the preparation of his defense"; whether the accused would be "prejudiced"; and whether the trial would otherwise be "fundamentally unfair." *Husske, supra*; *Ake, supra*.

Assessments of prejudice or fundamental fairness are always considered mixed questions of law and fact.[11] So are questions of materiality.[12] An *Ake / Husske* ruling is thus a mixed question of law and fact, which the Court of Appeals should have reviewed *de novo*.

---

[11] *See, e.g., Williams v. Taylor*, 529 U.S. 362, 371 (2000) (observing with approval that this Court had "[t]reat[ed] the prejudice inquiry as a mixed question of law and fact"); *Kimmelman v. Morrison*, 477 U.S. 365, 388 (1986) ("both the performance and the prejudice components of the ineffectiveness test are mixed questions of fact and law and that therefore a state court's ultimate conclusions regarding competence and prejudice are not findings of fact"); *Yarbrough v. Warden*, 269 Va. 184, 198 (2005) ("Moreover, as we have already observed, we are required to make our own prejudice determination . . . subject to our *de* novo review. [] Thus, we proceed to consider this mixed question of law and fact under the established principles stated above.") (internal citations omitted); *Williams v. Warden*, 254 Va. 16, 24 (1997) ("The legal part of the mixed question is whether this deficient performance constitutes "prejudice" within the meaning of that term as defined by the decided cases."); *Savino v. Murray* , 82 F.3d 593, 598 (4th Cir. 1996) (ineffective assistance of counsel, including prejudice component, presents a mixed question of law and fact). *See also United States v. Wiedyk*, 71 F.3d 602, 609 (6th Cir. 1995) (a "question of whether prosecutorial misconduct has rendered a trial 'fundamentally unfair' is a mixed question of law and fact and is reviewed *de novo*.").

[12] *Tsc Indus. v. Northway*, 426 U.S. 438, 450 (1976) ("The issue of materiality may be characterized as a mixed question of law and fact, involving as it does the application of a legal standard to a particular set of facts."); *United States v. Awadallah*, 349 F.3d 42, 65 (2d Cir. 2003) ("The issue of materiality may be characterized as a mixed question of law and fact, or as a pure question of law[.]"); *United States v. Ippolito*, 774 F.2d 1482, 1484 (9th Cir. 1985) (materiality presents a mixed question of law and fact reviewed de novo). *See also Love v. Freeman*,

## C. The Court of Appeals misapplied Virginia Code Section 8.01-680, which has no relevance to this case. *AOE* 3C.

The Court of Appeals misapplied Virginia Code Section 8.01-680 to this case. *AOE 2C. Walden*, No. 1376-20-2, at 7 ("We will not disturb the trial court's ruling on appeal. Code § 8.01-680."); *id.* at 1 ("We conclude that the trial court's decision was neither plainly wrong nor without evidentiary support."); *id.* at 7 ("Because the trial court's decision to deny Walden's request for expert funds was not plainly wrong or without evidentiary support, we affirm.").

That provision applies only to challenges to a conviction "on the ground that it is contrary to the evidence," Va. Code sec. 8.01-680, and precludes setting the conviction aside unless "such judgment is plainly wrong or without evidence to support it." *Id.* To the extent it applies to appellate review, as opposed to post-trial rulings by the trial court, its express terms would cover only a review for insufficient evidence of guilt. It has no application to Mr. Walden's appeal of a denial of expert assistance, particularly because he challenges only his sentence.

---

1999 U.S. App. LEXIS 20783, at *8-9 (4th Cir. Aug. 30, 1999) (unpub.) ("Questions of materiality under *Brady v. Maryland* [] are mixed questions of law and fact.") (citing published cases from the 8th, 2nd, 3rd, 5th, 7th, and 10th Circuits).

Section 8.01-680 captures a historically-significant, guiding principle in Virginia common law, so important that it apparently jeopardized the Commonwealth's willingness to ratify the U.S. Constitution: appellate courts should be deferential to a trial-jury's factfinding. *See Dennis v. Commonwealth*, 297 Va. 104, 124 (2019) (detailing the intertwined common law and constitutional histories of appellate deference to trial-jury factfinding).

The phrase "plainly wrong or without evidentiary support" is frequently found in appellate decisions on the sufficiency of trial evidence, often citing to Section 8.01-680. It is also used as a standard of review for pure questions of fact, aligning closely with other jurisdictions' similar "clear error" standard. But in all instances where that standard is properly used, the appellate court is applying it to purely factual questions; not, as argued *supra*, to mixed questions of law and fact.

As discussed *supra*, resolution of a due process claim under *Ake/Husske* is not a question of fact. Furthermore, the historic equities underlying Section 8.01-680 have no relevance to the record in this case. As explained with care in *Dennis*, *supra*, the reason for such a "highly deferential standard is that juries and trial judges are better equipped to

evaluate the truth of facts than appellate judges." 297 Va. at 126. That is so because juries may "observe witnesses' demeanor and hear their testimony as they undergo . . . cross-examination," placing them in a "superior position to assess the truth" between two conflicting witnesses. *Id.* (citing *Dudleys v. Dudleys*, 30 Va. (3 Leigh) 436, 441 (1832)).

None of these reasons have relevance to the procedural history of Mr. Walden's *Ake* claim. Here, in contrast, a trial court heard a proffer at a presentencing hearing from an officer of the court, concerning defense counsel's assessment of her compelling need for expert assistance under the Due Process Clause. It is common practice that such a "unilateral avowal of counsel" should be accepted by the court at face value, *Bethea*, 297 Va. at 756, n.13, just as it would be if made during a *prima facie* step-one *Batson* objection. *Id.* at 749 (no standard of proof, or burden of persuasion, for a *prima facie* step-one *Batson* proffer). No credibility assessments were appropriate. *Id.* at 749-50 (*Batson*, like Title VII's framework, "can involve no credibility assessment" at step one).

Similarly, the purpose of an *Ake* hearing differs dramatically from the purpose of a trial. As detailed *supra*, an *Ake* motion seeks to demonstrate a need for assistance in preparing *for* an adversarial

hearing[13]; due process does not even require an *Ake* hearing to be *inter partes*. *Supra.* For purposes of satisfying *Ake*, it can be assumed that both the expert's opinion and its factual foundation will be heavily disputed at trial; that is simply irrelevant to the *Ake* determination.

In other words, the *Ake* hearing is not the appropriate time for the trial court to resolve factual disputes. The principles of appellate deference to trial court factfinding are simply not applicable here, let alone Section 8.01-680.

## CONCLUSION

For the reasons above, Mr. Walden respectfully urges this Court to grant his Petition for Appeal.

Under *Ake* and *Husske*, defense counsel is tasked with articulating a preliminary need for expert assistance; not with proving it. In this case, defense counsel did exactly as required, surpassing the threshold requirement. The trial court erred when it denied Mr. Walden's motion for an expert psychologist to assist the defense at sentencing, and the Court of Appeals erred by affirming the trial court.

---

[13] *See Ake*, 470 U.S. at 77 (defense experts are necessary to a fundamentally fair adversarial system).

Respectfully Submitted,

Mr. Linwood Walden, Jr., by counsel:
/s/
Meghan Shapiro
Va. Bar No. 79046
Senior Assistant Public Defender
Virginia Indigent Defense Commission
1604 Santa Rosa Rd., Suite 200
Richmond, VA 23229
Tel: 804.662.7249
Fax: 804.662.7359
Email: mshapiro@vadefenders.org

## CERTIFICATE

1) Counsel for Appellant, Mr. Linwood Walden, is:

Meghan Shapiro
Va. Bar No. 79046
Senior Assistant Public Defender
Virginia Indigent Defense Commission
1604 Santa Rosa Rd., Suite 200
Richmond, VA 23229
Tel: 804.662.7249
Fax: 804.662.7359
Email: mshapiro@vadefenders.org

Counsel for Appellee, the Commonwealth of Virginia, is:

Susan Brock Wosk
Va. Bar No. 87343
Assistant Attorney General

Office of the Attorney General of Virginia
202 North Ninth Street
Richmond, Virginia 23219
Tel: 804.786.2071
Fax: 804.371.0151
Email: swosk@oag.state.va.us

2) A copy of this Petition for Appeal will be emailed on March 24, 2022 to opposing counsel, as well as to oagcriminallitigation@oag.state.va.us.

3) This filing is in compliance with the length limitation of 35 pages, as specified in Rule 5:17(f), not including cover page, tables, signature blocks, or certificate. The length is 35 pages.

4) Counsel for the defendant has been appointed.

5) Mr. Walden requests an **in person oral argument before a panel of justices**, to state why the petition for appeal should be granted.

/s/ Meghan Shapiro



# COMMONWEALTH of VIRGINIA

### Office of the Attorney General

Jason S. Miyares
Attorney General

202 North Ninth Street
Richmond, Virginia 23219
804-786-2071
Fax 804-786-1991
Virginia Relay Services
800-828-1120
7-1-1

April 14, 2022

The Honorable Muriel-Theresa Pitney, Clerk
Supreme Court of Virginia
100 North Ninth Street
Richmond, Virginia 23219

Re: **Linwod Gequan Walden, Jr., v. Commonwealth of Virginia**
**Supreme Court Record No. 220181**

Dear Ms. Pitney:

In connection with the above-styled matter, in which a Petition for Appeal has been filed on March 24, 2022, please be advised that the Commonwealth does not intend to file a Brief in Opposition unless, of course, requested to do so by the Court. It should be noted that the underlying issues raised in the appeal have already been adversely decided against Walden in both the trial court, the Circuit Court for the City of Richmond (CR19F03055, CR19F03056, CR19F02888, CR19F02891), and the Court of Appeals (Record No. 1376-20-2).

Very truly yours,

Susan Brock Wosk
Assistant Attorney General

# VIRGINIA:

*In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond on Tuesday the 18th day of October, 2022.*

Linwood Gequan Walden, Jr.,
 a/k/a Linwood Gequan Walden,                                                    Appellant,

  against        Record No. 220181
                   Court of Appeals No. 1376-20-2

Commonwealth of Virginia,                                                      Appellee.

From the Court of Appeals of Virginia

Upon review of the record in this case and consideration of the argument submitted in support of the granting of an appeal, the Court refuses the petition for appeal.

And it is ordered that the Commonwealth recover of the appellant the costs in this Court and the costs in the courts below.

Costs due the Commonwealth
 by appellant in Supreme
 Court of Virginia:

     Public Defender          $600.00 plus costs and expenses

A Copy,

Teste:

Muriel-Theresa Pitney, Clerk

By:

Deputy Clerk

In the Supreme Court of Virginia
_____

Linwood Gequan Walden, Jr.

v.

Commonwealth of Virginia
_____

Record No. 220181
_____

**PETITION FOR REHEARING**
_____

Meghan Shapiro
Va. Bar No. 79046
Senior Assistant Public Defender
Virginia Indigent Defense Commission
1604 Santa Rosa Rd., Suite 200
Richmond, VA 23229
Tel: 804.662.7249
Fax: 804.662.7359
Email: mshapiro@vadefenders.org

*Counsel for Mr. Linwood Walden*

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................ii

TABLE OF AUTHORITIES ........................................................ iii

I.   Introduction and Assignments of Error ............................1

II.  Factual Background...............................................................3

  A.  Mr. Walden's Particularized Need ................................3

  B.  The Trial Court's Rejection of Counsel's Proffers ...........5

  C.  Without his expert, Mr. Walden was prejudiced...............6

III.  Argument ..............................................................................7

  A.  The Due Process Right under *Ake v. Oklahoma* ..............7

  B.  The court below misapplied three standards of review. .................8

  C.  Under the right standards, the trial court erred. ...........9

IV.  Conclusion. ..........................................................................10

# TABLE OF AUTHORITIES

*Ake v. Oklahoma*, 470 U.S. 68 (1985) ............................................. passim

*Commonwealth v. Sanchez*, 268 Va. 161 (2004) ................................... 7, 9

*Henderson v. Commonwealth*, 285 Va. 318 (2013) ................................. 8

*Husske v. Commonwealth*, 252 Va. 203 (1996) ............................. passim

*Kimmelman v. Morrison*, 477 U.S. 365 (1986) ....................................... 8

*McWilliams v. Dunn*, 137 S.Ct. 1790 (2017) ........................................... 7

*Taylor v. Northam*, 300 Va. 230 (2021) ................................................... 9

*Tsc Indus. v. Northway*, 426 U.S. 438 (1976) .......................................... 8

*United States v. Awadallah*, 349 F.3d 42 (2d Cir. 2003) ......................... 8

*Walden v. Commonwealth*, No. 1376-20-2 (Va. App. Feb. 22, 2022)
 (unpub.) .................................................................................................... 2

*Walden v. Commonwealth*, No. 220181 (Va. Oct. 18, 2022) (pet. refused)
 ..................................................................................................................... 2

*Williams v. Taylor*, 529 U.S. 362 (2000) .................................................. 8

*Williams v. Warden*, 254 Va. 16 (1997) .................................................... 8

## I.    Introduction and Assignments of Error

When an indigent defendant requests court-appointed expert services, they carry a threshold burden under *Ake v. Oklahoma*, 470 U.S. 68 (1985), to show that those services are likely to be significant for their defense. But *Ake*'s is a preliminary burden to show likelihood, need-for-evaluation, and need-for-preparation, rather than proof of an ultimate issue. It would be a Catch-22 to require more, before "making certain that [the accused] has access to the [very] raw materials integral to the building of [his] effective defense." *Ake*, 470 U.S. at 77.

Linwood Walden needed an expert psychologist for his sentencing. The expert would have diagnosed him, prescribed treatment, and explained how that treatment would reduce his risk of recidivism. His counsel made a timely motion under *Ake* and *Husske v. Commonwealth*, 252 Va. 203 (1996): she proffered why and how the expert was likely to play a significant role in Mr. Walden's defense; and argued he would be prejudiced without it. Yet, the trial court denied the motion.

The Commonwealth went on to forcefully argue, unrebutted, that Mr. Walden would recidivate. The trial court sentenced Mr. Walden to 22 years' incarceration plus 58 years suspended. J.A.281. The Court of

Appeals, applying *three* incorrect standards of review, upheld the denial of expert services. *Walden v. Commonwealth*, No. 1376-20-2, at 6-7 (Va. App. Feb. 22, 2022) (unpub.).

Mr. Walden then unsuccessfully brought these Assignments of Error in this Court:

1. The Court of Appeals erred in finding the trial court did not err in denying Mr. Walden's motion for expert assistance. Specifically:

    a. The Court of Appeals violated *Husske*, 252 Va. 203, and *Ake*, 470 U.S. 68, by upholding the denial of a defense expert despite a preliminary articulation that the expert was likely to be a significant factor in Mr. Walden's defense, and that he would be prejudiced without it.

    b. To the extent the Court of Appeals ruled consistently with *Husske*, *Husske* violates *Ake*, and should be overturned, extended, modified, or vacated.

2. The Court of Appeals applied three incorrect standards of review:

    a. by applying an abuse-of-discretion standard to a constitutional due process claim;

    b. by applying a factual standard of review to a legal ruling;

    c. and by applying Virginia Code Section 8.01-680 to a non-sufficiency claim on appeal.

*Walden v. Commonwealth*, No. 220181 (Va. Oct. 18, 2022) (pet. refused).

This Court should grant Mr. Walden's petition to clarify the appropriate standard of review for an *Ake* claim; and the appropriate threshold burden that *Ake* places on indigent defendants.

## II.    Factual Background

### A. Mr. Walden's Particularized Need

When Mr. Walden was six, a violent rape left his mother unstable and drug-dependent, transforming what could have been a supportive home into anything but. J.A.275-76. Young Mr. Walden was exposed to drugs, neglect, and abuse. J.A.275-76; 266. As a teen he developed bipolar disorder. J.A.266, 278. He received no treatment or interventions, suffering without the basic coping skills that nurtured children develop.

As a young adult, he became a father; but his three-year-old daughter was murdered in a highly-publicized incident. J.A.276. Another of his children died from SIDS. J.A.277. Reeling from grief, he self-medicated and became addicted to drugs. Within a year, after unsuccessfully trying to kill himself, he committed the present felonies.

All of this was proffered by Mr. Walden's public defender in support of her motion for a psychologist. Counsel argued the expert would:

connect Mr. Walden's traumatic upbringing to his adult behavior; and explain how treatment would lower his recidivism risk.

Some of counsel's arguments are printed below, to demonstrate the particularized and great need for an expert that Mr. Walden presented:

- "I think that's the most important part is that she can help this Court crack [*sic*.] the plan. We have to understand how we got to where we are and understand where we are so we know how to move forward in a way that protects, not just Mr. Walden and not just for mitigation at sentencing, but protects the community when he is eventually released from incarceration . . . .what she can go into is his experiences of trauma, the long-term affect that results from that trauma, and that it impacts actions and ability to understand actions . . . to inhibit impulses and control your own behavior and that destructive behavior often is a result of an attempt to mitigate emotional trauma." J.A. 266-67.

- "[S]he can help evaluate what tools [traumatized people] have available and expand that tool box . . . so that they can more appropriately [behave.]" J.A.267.

- "He would be significantly harmed by an inability to explore that and present mitigation to the Court explaining how this happened, how he came to be here, and, most importantly, how we can fix it moving forward." J.A.269.

- "[It] helps his case and helps for when he is released to reduce the risk of recidivism and to make the community safer." *Id.*

- "He's previously been incarcerated on a robbery charge. I'm sure the Commonwealth will bring that up. In speaking with Dr. Boyd about that prior history . . . you re-evaluate, you check the diagnosis, and, then, you try something else. . . . The answer isn't to increase . . . the amount of time. It's to re-evaluate the premise . . . so that we can actually get at the root issue. . . . to make him better, more able to function in society and to protect society when

he is eventually released, I think, it's absolutely imperative that the Court allow us to do that." J.A.270.

- "... to evaluate Mr. Walden ... particularly, his history of trauma and mental health ... and how that can impact decision-making behavior and what measures can be put in place in the future to address those issues." J.A.296.

### B. The Trial Court's Rejection of Counsel's Proffers

Defense counsel's proffers were lengthy and unobjected-to. J.A.232-37 & 266-280. Yet the trial court rejected them, believing they conflicted with a sparse summary of Mr. Walden's psychosocial history found in the presentence report, J.A. 280-281, and choosing to rely solely on the PSR over counsel's detailed proffers. J.A.296-97. Based on no evidence or records beyond Mr. Walden's own statements,[1] that report concluded his childhood was fine and that he had no mental health treatment history.[2]

Defense counsel argued the PSR's shortcomings[3] (along with her proffers of Mr. Walden's actual history, *supra*). Mr. Walden even tried,

---

[1] The PSR was based on an officer's single, remote, non-private, 30-60 minute interview of Mr. Walden, during which he declined to speak about many things. J.A.275-76; J.A.318-19.

[2] J.A.392 ("provided adequate food, clothes, and shelter ... No type of abuse reported ... reports no alcohol or drug use in his family life"); J.A.396 ("reports no history of mental health treatment").

[3] J.A.275-76 (officer talked to him one time, remotely, and "[o]f course he doesn't tell them every single story or mention every single trauma especially in regards to his parents. He loves his parents. ... [But] I will

on the record, to correct his mistake, explaining how hard it was to speak about his past.[4] As the trial court would later agree, Mr. Walden held back his history for understandable and "obvious" reasons.[5]

## C. Without his expert, Mr. Walden was prejudiced.

At his sentencing hearing, Mr. Walden presented evidence confirming all that his counsel had proffered. J.A.298-317; J.A.321-328; J.A.328-344. In particular, his medical records showed a bipolar diagnosis, alcohol dependency, auditory hallucinations, suicidal ideations, and a suicide attempt. J.A.333-34, 338, 341.

The Commonwealth argued Mr. Walden was "unwilling to stop committing violent crimes against strangers," J.A.356, stating "he's not going to stop when he's released." J.A.357. The defense argued for a

---

tell the Court that Mr. Walden has had a particularized history of trauma. . . ."); *id.* at 277 ("you can't rely on the presentence report to get to the heart of the issues especially when it comes to trauma and mental health"); *id.* at 280 (PSR interview is "not an in-depth length heart-to-heart"); *id.* at 291 (he didn't share his family history with the officer).

[4] J.A.282 ("I just wanted to say, man, it's not easy getting on this (indecipherable.) It's not easy to tell your like trauma about your family. It's . . . that's something you don't understand.").

[5] J.A.358 ("After hearing from your mother, I can clearly understand why you might not want to disclose something like that, obviously.").

reduced sentence, J.A.346-49, but had no evidence upon which to support an argument that his future would be better than his past. J.A.350.

## III. Argument

### A. The Due Process Right under *Ake v. Oklahoma*

The state must provide necessary expert assistance to indigent accused persons. *Ake*, 470 U.S. 68. This applies with full force at sentencing. *Id*. at 84. *See also McWilliams v. Dunn*, 137 S.Ct. 1790, 1798 (2017). An expert must be provided upon a threshold showing that it is "likely to be a significant factor in [the] defense[.]" 470 U.S. at 82.

*Ake*'s is a threshold, "preliminary showing" requirement of "likel[ihood]." *Ake*, 470 U.S. at 74. Nothing need be proven (there is no standard of proof), and no evidence presented; the defense must only "articulate" its need. *Commonwealth v. Sanchez*, 268 Va. 161, 167 (2004).

Virginia implements *Ake* with this test: an expert must be provided if the subject matter is "likely to be a significant factor in his defense" (alternatively characterized as the expert would "materially assist him in the preparation of his defense,"); and the accused will be "prejudiced by the lack of expert assistance" (alternatively characterized as "result in

a fundamentally unfair trial"). *Husske*, 252 Va. at 212-12. Virginia has also added a requirement of "particularized need." *Id*. at 212.

## B. The court below misapplied three standards of review.

In upholding the trial court, the Court of Appeals applied three incorrect standards of review. First they reviewed the finding against "particularized need" for abuse of discretion. But Mr. Walden brought his claim not only under *Husske*, but also the Due Process Clause directly. The "abuse of discretion" standard is inadequate for a constitutional error. *Henderson v. Commonwealth*, 285 Va. 318, 329 (2013). *AOE 2A.*

Furthermore, in an *Ake/Husske* claim, evaluation of the defense's threshold showing is a mixed question of law and fact; it involves legal conclusions about defense theories and rebuttal ("likely to be a significant factor in his defense," "materially assist him in the preparation of his defense," and whether the resulting trial would be "fundamentally unfair"). Assessments of prejudice or fundamental fairness are always mixed questions,[6] as is materiality.[7] An *Ake/Husske* ruling is thus a

---

[6] *See Williams v. Taylor*, 529 U.S. 362, 371 (2000); *Kimmelman v. Morrison*, 477 U.S. 365, 388 (1986); *Yarbrough v. Warden*, 269 Va. 184, 198 (2005); *Williams v. Warden*, 254 Va. 16, 24 (1997).

[7] *Tsc Indus. v. Northway*, 426 U.S. 438, 450 (1976); *United States v. Awadallah*, 349 F.3d 42, 65 (2d Cir. 2003).

mixed question, the legal component of which must be reviewed *de novo*. *Taylor v. Northam*, 300 Va. 230, 250-51 (2021). *AOE 2B*.

Finally, the Court of Appeals misapplied Virginia Code Section 8.01-680. *AOE 2C*. To the extent this provision applies to appellate review, as opposed to post-trial, its express terms apply only to sufficiency claims. It has no application here, particularly because Mr. Walden challenges only his sentence and not his conviction.

### C. Under the right standards, the trial court erred.

On a *de novo* review, Mr. Walden met the *Ake/Husske* test because his counsel made a "threshold showing," *Ake*, 470 U.S. at 82, that the expert was "likely to be a significant factor in his defense[.]" *Husske*, 252 Va. at 211 (quoting *Ake*, 470 U.S. at 82-83) (emphasis added). He "demonstrated" (rather than proved) that the expert would "contribute to the formulation and perfection of a viable defense" (rather than prove the defense itself). *Husske*, 252 Va. at 218. *AOE 1A*.

This threshold demonstration by counsel has also been discussed in terms of "articulat[ion]." *Sanchez*, 268 Va. at 167. Here it was made with

a lengthy, detailed proffer.[8] Any steeper requirement risks denying the accused the ability to "evaluat[e,] prepar[e,] and present[] the defense." *Id*. (quoting *Ake*, 470 U.S. at 83. It denies the "opportunity to present [his] claims fairly within the adversary system." *Husske*, 252 Va. at 211.

Yet, the trial court rejected the defense proffer, due to conclusory, hearsay statements in the PSR. Particularly in light of attempts by counsel and Mr. Walden to explain the PSR's inaccuracy, that was error. For purposes of *Husske* and *Ake*, counsel's proffers should be evaluated on their own two feet, precisely because their very purpose is demonstrating need for assistance **in an upcoming adversarial proceeding**. It can therefore be expected that the evidence will be disputed. It is illogical to deny an expert due to the very reason that expert is needed; that violates *Ake*'s holding that defense experts are necessary to a fair adversarial system. 470 U.S. at 77.

## IV. Conclusion

Mr. Walden respectfully requests that this Court grant his petition.

---

[8] If the Court of Appeals complied with *Husske*, then *Husske* should be modified to comply with *Ake*; otherwise overturned or vacated. *AOE 1B.*

Respectfully Submitted,


Mr. Linwood Walden, by counsel:

/s/
Meghan Shapiro
Va. Bar No. 79046
Senior Assistant Public Defender
Virginia Indigent Defense Commission
1604 Santa Rosa Rd., Suite 200
Richmond, VA 23229
Tel: 804.662.7249
Fax: 804.662.7359
Email: mshapiro@vadefenders.org

<u>CERTIFICATE</u>

1) Counsel for Appellant, Mr. Linwood Walden, is:

> Meghan Shapiro
> Va. Bar No. 79046
> Senior Assistant Public Defender
> Virginia Indigent Defense Commission
> 1604 Santa Rosa Rd., Suite 200
> Richmond, VA 23229
> Tel: 804.662.7249
> Fax: 804.662.7359
> Email: mshapiro@vadefenders.org

Counsel for Appellee, the Commonwealth of Virginia, is:

> Susan Brock Wosk
> Va. Bar No. 87343
> Assistant Attorney General
> Office of the Attorney General of Virginia
> 202 North Ninth Street
> Richmond, Virginia 23219
> Tel: 804.786.2071
> Fax: 804.371.0151
> Email: swosk@oag.state.va.us

2) A copy of this Petition for Appeal will be emailed on November 1, 2022 to opposing counsel, as well as to oagcriminallitigation@oag.state.va.us.

3) This filing is in compliance with the Rule 5:20(c)(1), in that it is 10 pages not including cover page, tables, signature blocks, or certificate.

/s/ Meghan Shapiro

# VIRGINIA:

*In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond on Thursday the 2nd day of February, 2023.*

Linwood Gequan Walden, Jr.,
  a/k/a Linwood Gequan Walden,                                              Appellant,

  against          Record No. 220181
                   Court of Appeals No. 1376-20-2

Commonwealth of Virginia,                                              Appellee.

Upon a Petition for Rehearing

On consideration of the petition of the appellant to set aside the judgment rendered herein on October 18, 2022 and grant a rehearing thereof, the prayer of the said petition is denied.

A Copy,

Teste:

Muriel-Theresa Pitney, Clerk

By:

Deputy Clerk